UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-363-H

TIMOTHY DICKENS, et al.                                              PLAINTIFFS

V.

ZEON G.P. LLC and ZEON CHEMICALS
PARTNERSHIP d/b/a ZEON CHEMICALS, L.P.                               DEFENDANT

## MEMORANDUM OPINION

Some five years ago, counsel in this case filed a total of six cases contesting the damage caused by emissions from chemical and utility plants near the "Rubbertown" area of Jefferson County and filed a seventh case from the Bardstown area. Those cases have proceeded fitfully but steadily through the litigation process.[1] With this decision the Court brings another of these cases to conclusion.

Currently before the Court is a proposed class action settlement (the "Settlement Agreement") for the benefit of residents within two miles of the Zeon chemical plant (the

---

[1] While all of the cases have similarities, the results have varied due to the actual evidence in each and, no doubt, also due to the attitude of each defendant toward settlement.
 In *Cochran v. Oxy Vinyls* (3:06CV-364-H), this Court granted summary judgment to Defendants on July 1, 2009. The matter was appealed and then dismissed under Rule 42(b), Fed. R. App. P. In *Cox v. Am. Synthetic Rubber Co.* (3:06CV-422-H), the Court denied class certification on December 18, 2008. The matter remains pending. In *Donaway v. Rohm & Haas Co.* (3:06CV-575-H), the Court denied approval of the first settlement on July 1, 2009. The matter remains pending. On the same date, Defendants in *Bell v. DuPont* (3:07CV-581-H) agreed to certain settlement modifications and the Court approved a settlement in the amount of $600,000, plus attorney's fees of $75,000. In *Humphrey v. Hexion* (3:06CV-276-H), the Court approved a settlement of $1,250,000, plus $416,000 in attorney's fees and costs.
 Two of the cases ended in private settlements. In *Burkhead v. E.ON/LG&E* (3:06CV-282-H), after Plaintiffs' motion for class certification was remanded, the parties entered a confidential individual settlement and an order of dismissal on March 16, 2011. In *Armstrong v. Barton Brands* (3:06CV-332-H). The Court denied class certification on November 21, 2007, and on November 25, 2009, dismissed all claims except those for trespass. Thereafter, on June 24, 2010, the parties entered into a private settlement of the remaining individual claims and agreed to dismiss the case.

"Facility"). Prior to granting preliminary approval to the settlement, the Court met with all counsel, including those of objectors. This process resulted in changes to the initial settlement proposal. The Court expresses its appreciation to Mr. Thomas Fitzgerald for his participation in all aspects of the Fairness Hearing process. The Court also held a hearing, during which numerous residents testified concerning the Settlement Agreement. After due consideration and for the following reasons, the Court concludes that the Settlement Agreement is fair and reasonable.

I.

The Settlement Agreement is fairly straightforward.

Those persons covered by this settlement are those persons residing within two miles of the Facility and who did not opt-out of the settlement (the "Class"). The total amount of the proposed settlement is $1,500,000, from which attorney's fees are paid. Based upon the responses to the notices, all Class claimants within Zone 1 (the one-mile radius) will receive $750 each. All Class claimants within Zone 2 (the one-to-two mile radius) will receive $100 each. These are the maximum amounts provided under the Settlement Agreement. No claims have been rejected for any reason.

The Settlement Agreement further provides that $250,000 will be paid to the Jefferson County Public Education Fund (the "School Fund") for the use among the nine (9) elementary schools within the two-mile radius of the Facility. Based upon the payments to Class claimants, the School Fund is likely to increase to an amount in excess of $550,000.[2]

---

[2] Under the Settlement Agreement, Plaintiffs requested $300,000 in attorney's fees. To the extent the Court approves a lower amount, the excess funds are added to the School Fund.

2

The Settlement Agreement contains release provisions. The releases do not bar "any claims for relief based solely on future operations of the Facility by Defendants that both (i) involve substantially different manufacturing processes; and (ii) result in substantially different or greater air emissions, releases, or odors than current or historical operations, and further provided that this injunction also shall not bar claims for relief based solely on a catastrophic release from the Facility." The Settlement Agreement further provides that claims for new personal injury are not a subject of the Settlement Agreement and these claims are specifically preserved if that personal injury is caused by emissions by Zeon. Further, after a period of five (5) years, any person may sue Zeon for any emission whatsoever as long as those emissions are beyond the standards set in the Settlement Agreement. Otherwise, as a general matter any claims of the Class are released.

The Settlement Agreement also contains certain injunctive provisions which prevent class members from bringing any legal action against Defendant for five (5) years. Counsel for some residents objected to the language because it is excessive and broader than the release language. Upon further consideration, the Court concludes that the injunctive relief is not materially different than the release provisions.

II.

A district court has broad discretion to certify a class. *Mayer v. Mylod*, 988 F.2d 635, 640 (6th Cir. 1993). Though the Court's discretion is broad, it must be exercised with great care. Courts should be especially mindful when approving class certification for the purposes of settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The Court has already approved certification

3

of several similar classes for purposes of settlement and has denied several of Plaintiffs' motions for class certification of their claims going forward.

The Class consists of hundreds of persons who have similarly suffered from odors, fallout particulate and air contaminants, as alleged in the Complaint. The Class is ascertainable because all of its members reside within a certain geographic radius surrounding the Facility. It is sufficiently numerous so that joinder is impracticable. In other words, the Class meets the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

The Class also can meet the commonality requirement, contained in Fed. R. Civ. P. 23(a)(2), because all of its members share at least one common factual or legal issue. Here, Plaintiffs have alleged that Defendant's chemical discharges have caused substantial damage to Plaintiffs' properties. Whatever the source of the problem, the class members present complaints with many similarities as well as some material differences. All have claimed some level of nuisance, discomfort, or irritation. Consequently, these common questions of law and fact meet the commonality requirement of Fed. R. Civ. P. 23(a)(2). The Court finds that the claims of the class representatives are typical of others in the Class, satisfying the typicality requirement of Fed. R. Civ. P. 23(a)(3).

The class members have similar complaints, and the Court finds that their representative will fairly and adequately protect the class interests. More specifically, the named Plaintiffs allege claims consistent with those of the Class, appear to have no inherent conflicts with it, and appear to have actively participated in both the prosecution of, and the negotiations to settle, this lawsuit. Finally, their counsel are experienced in preparing and prosecuting large, complicated class actions, particularly those involving environmental or emissions claims.

The settling class members do share many common issues of fact and law. To be sure, some class members disagree about the significance of the discharges each has experienced. However, many of those have opted out of the settlement class. The proposed resolution would not involve individual issues. The environmental impact from the odors, particulate and air contamination has affected Plaintiffs' properties in similar ways under the law. For purposes of settlement, the class has agreed on a uniform compensation scheme. Taken together, the Court is satisfied that the class meets all of the requirements of Fed. R. Civ. P. 23(b)(3).

An incongruity may appear to exist between the Court's prior decisions denying class certification on cases going forward while approving a similar class for purposes of settlement. The difference is that those in the settlement class have agreed upon the commonality of the level of nuisance that they have experienced. Because they have agreed upon the level of the nuisance experienced, the Court has a much easier time finding commonality for purposes of the settlement.

### III.

In this section, the Court will examine four primary objections: (1) the adequacy of the notice, (2) the adequacy of the settlement amount, (3) the fairness of the release and opt-out provisions, and (4) the propriety of aggregating some of the settlement amounts into an area School Fund. These questions could affect the overall fairness of the Settlement Agreement.

In deciding whether to approve such settlements, courts have recognized a strong public interest in favor of settlements, particularly in class action suits. *See Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Therefore, courts should approve a class action settlement so long as it is "fair, adequate, and reasonable"

and is not the product of collusion between the parties. *See United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986). The Sixth Circuit has said that a class action settlement "is a compromise which is reached by the parties after they have made an assessment of the risks, expenses and delay of further litigation." *Lindsey v. Memphis-Shelby Cnty. Airport Auth.*, 2000 WL 1182446, at *5-6 (6th Cir. 2000). A district court must assess the reasonableness of a compromise after examining the evidence presented and the terms of the settlement. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). Even when taking a close look at a settlement, a court cannot modify the terms of the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). As the Fifth Circuit aptly put it, "[t]he settlement must stand or fall as a whole." *Cotton*, 559 F.2d at 1332.

A.

The Court first turns to the reasonableness of the notice. The Court required notice of the hearing to be mailed to all residents and property owners reasonably identifiable. The direct mail notice required here was typical of other cases. The Court made an effort to shorten and clarify the notice.

The Settlement Agreement required that notice be given to all residential addresses within a two (2) mile radius of the Zeon facility and by settlement publication in a newspaper that circulated in the Class neighborhood. A total of 14,212 individual Long Form Notices were mailed to each residential address within a two (2) mile radius from Zeon and a Short Form Notice was published in the *Louisville Defender*, the newspaper of general circulation within the Class neighborhood. Some 3,000 of these notices were returned as undeliverable due to the

6

absence of a resident or any occupant.

Plaintiffs have received 2,393 Claim Forms, 607 of which are within Zone 1 (the one-mile radius) and 1,786 within Zone 2 (the one-to-two mile radius). Of those Claim Forms, 546 were received by Class Counsel as insufficient, lacking either proof of residency or proof of ownership, and those potential claimants received from Class Counsel a Notice of the Deficiency and an opportunity to perfect the Claim. Of the 546 Notices to deficient Claimants, 476 have been returned and registered as perfected and 70 remain to be returned to Class Counsel's office.

One hundred four (104) persons have elected to exclude themselves from the Settlement Agreement. Of those 104 persons who requested to opt out, 33 are independent opt-outs and 71 are opt-outs which are on a standard form of exclusion which was obviously circulated by someone in the neighborhood.

For the most part, the responses and opt-out requests suggest that people understood the process. It is true that a significant majority of those contacted in the one-mile to two-mile radius did not respond to the notice. However, the amount due those persons was only $100 and perhaps this was insufficient to draw interest. The Court does not believe that the fairly low response rate is an adequate basis for deeming the proposed settlement to be unfair or the notice inadequate.

B.

The Court next considers the adequacy of the settlement amount. For the most part, the settlement amount reflects the risk each side faces, particularly Plaintiffs. Plaintiffs' only realistic claim sounds in nuisance. Under Kentucky law, nuisances are the "'class of wrongs which arises from the unreasonable, unwarrantable, or unlawful use by a person of his own

7

property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage.'" *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (Ky. 1950) (quoting 39 Am. Jur. Nuisances, § 2). Kentucky codified the common law of nuisance by statute in KRS §§ 411.500-411.570. Section 411.550 sets out factors that a trier of fact should consider when determining whether a use constitutes a nuisance.[3] Finding of a nuisance involves a weighing of the costs and benefits of the use in question. Thus, even if Plaintiffs are absolutely correct concerning Defendant's actions, a trier of fact could still conclude that it did not constitute a nuisance.

1.

Several other difficulties stand in the way of a successful result. This record contains no evidence of a connection between the known emissions from the Zeon Facility and the odors and nuisances alleged in the complaint. Without expert testimony tying these two conditions, a jury would find it difficult to separate the odors or alleged nuisances which emanate from various sources near the class area. By statute in a nuisance claim, "[n]o damages shall be awarded for

---

[3] 1) In determining whether a defendant's use of property constitutes a private nuisance, the judge or jury, whichever is the trier of fact, shall consider all relevant facts and circumstances including the following:
    (a) The lawful nature of the defendant's use of the property;
    (b) The manner in which the defendant has used the property;
    (c) The importance of the defendant's use of the property to the community;
    (d) The influence of the defendant's use of property to the growth and prosperity of the community;
    (e) The kind, volume, and duration of the annoyance or interference with the use and enjoyment of claimant's property caused by the defendant's use of property;
    (f) The respective situations of the defendant and claimant; and
    (g) The character of the area in which the defendant's property is located, including, but not limited to, all applicable statutes, laws, or regulations.

(2) A defendant's use of property shall be considered as a substantial annoyance or interference with the use and enjoyment of a claimant's property if it would substantially annoy or interfere with the use and enjoyment of property by a person of ordinary health and normal sensitivities.

KRS § 411.550.

annoyance, discomfort, sickness, emotional distress, or similar claims for a private nuisance," rather the plaintiff must prove liability and damages "independent of whether defendant's use of property is found to constitute a nuisance." KRS § 411.560(3). At this point, Plaintiffs have not tendered any reliable evidence of lost property value related to a nuisance. The Court cannot assume that such evidence is readily available.

Plaintiffs' personal injury negligence claims would also be difficult to prove. To make such a claim, one must show that Zeon breached a legal duty. Because Zeon appears to have complied with all federal and state environmental statutes, proving the violation will be quite difficult. Also, Plaintiffs must show some physical injury. *Wood v. Wyeth-Ayerst Labs., Div. of Amer. Home Prods.*, 82 S.W.3d 849, 853-54 (Ky. 2002) (holding that mere exposure to a potentially harmful substance does not give rise to a cause of action for personal injury). Though Plaintiffs have complained that the smell makes them ill and that they suffer physical side effects, none have produced any medical evidence of illness or injury. Therefore, the negligence claims would likely fail.

2.

The small amounts due the members of the settlement class certainly suggest that these claims have been settled for nuisance value. The Court should analyze the settlement from that perspective. Even a nuisance settlement may be fair, adequate, and reasonable. As Judge Posner has said, nuisance settlements are permitted in class actions, and "defendants can be trusted to make such settlements only if it is in their best interest to do so." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 686 (7th Cir. 2008). Here, the fairly modest amounts class members will receive reflect both parties' recognition of existing evidence and the great difficulty in proving

9

the case.

In general, the strength of Plaintiffs' case stems from the acknowledgment that something has created a noxious smell. This smell aggravates a great number of people, who are all complaining about substantially the same problem. The weakness in Plaintiffs' case is the difficulty in determining liability and damages. At this point in the litigation, though the result is uncertain, Plaintiffs face seemingly insurmountable obstacles.

C.

Two final considerations remain: the fairness of the opt-out provision and the appropriateness of the School Fund provision.

There are substantial uncertainties which affect the potential outcome of this case and factor into the decision of any class member weighing his option to opt out. The complexity, expense, probable duration, and risk in establishing liability and damages all weigh in favor of a determination that the Settlement Agreement is fair and reasonable. Though the settlement amount is quite modest, the evidence suggests that the results at trial could be worse. The Court concludes that by treating all class members similarly the settlement proposal presents an understandable and clear choice, making the opt-out provision fair in these circumstances.

Some class members have also raised concerns about the School Fund because it does not address any local environmental concern. True, the School Fund will confer a generalized benefit to the area as compensation for a specific environmental complaint. However, the monies paid are a benefit to the local communities and are not a basis for finding the settlement either unreasonable or unfair. For those who truly believe otherwise, the settlement allows for any party to opt out and to maintain their individual claims.

D.

In view of the analysis in Sections II and III of the Memorandum Opinion, the Court reaches the following conclusions. The Court finds that settlement of this matter by the Settlement Agreement is superior to other available methods for a fair and efficient adjudication of this lawsuit. *See* Fed. R. Civ. P. 23(b)(3). The proposed resolution contained in the Settlement Agreement is particularly appropriate. The Court also notes that because this lawsuit is being settled, rather than litigated, it need not consider the manageability issues that might be present by a class action of this nature. *See Amchem Prods., Inc.*, 521 U.S. at 620.

IV.

The final issue for the Court's consideration is the matter of reasonable attorney's fees. Counsel has requested attorney's fees of $300,000, to be paid from the settlement amount of $1,500,000. Traditionally, the rule in American courts is that each litigant is responsible for their own attorney's fees. Here, counsel seeks fees under the common fund exception to the general rule. The settlement proposed here envisions such a fund. Counsel is entitled to a reasonable fee under the circumstances.

There are two methods of calculating a reasonable fee from a common fund: the lodestar and the percentage of fund methods. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993). Regardless, in the Sixth Circuit, any award of attorney's fees in a common fund case must be reasonable. *Id.* at 516. Because reasonableness is the ultimate test for attorney's fees, any court should undertake a more comprehensive analysis. There are at least six factors to consider when doing the analysis:

> (1) the value of the benefit rendered to the plaintiff class; (2) the

> value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)).

Awarding attorney's fees out of the common fund always raises concerns that class members, those who theoretically should be benefitting from the settlement, no longer have someone representing their interest. The Sixth Circuit has accurately characterized these fears:

> In assessing the reasonableness of requests for fees in class actions resulting in the creation of a common fund, a court must consider factors that are not present in statutory fee shifting cases. The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel.

*Rawlings*, 9 F.3d at 516. This echoes the findings of the Third Circuit Task Force, which succinctly described the phenomenon by saying, that in common fund settlements, class counsel's role "changes from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit." *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 255 (1985). As a result, the judge approving the settlement must take on the fiduciary mantle discarded by class counsel. *Id.* The Court must act as a fiduciary for

12

all parties, but particularly for the Class. In doing so, the Court considers the six lodestar factors.

After some five years of litigation, the settlement is approved based upon rather small payments to individual class members and a more substantial benefit to the community through the School Fund. In other words, the Court has approved the settlement based upon the assumption that Plaintiffs' counsel ultimately would be unable to prove their case. Due to the absence of proof or the failure to develop it, counsel was left without a strong case. The Court is not aware that the litigation has resulted in Zeon changing any of its emission policies to improve local conditions.[4]

Counsel says that they have entered into contingency fee contracts with numerous individual plaintiffs. However, counsel have not said how many such contracts exist nor have they described their terms. Consequently, the Court cannot say that a percentage fee is the most appropriate measure of compensation. Plaintiffs' counsel has not kept an accounting of the actual hours spent on the case. Nevertheless, they assert, based on past experience, that they have spent 500 hours of prosecuting the case and another 191 hours processing and verifying claims. Counsel has not asserted or verified an appropriate hourly rate.

The amount of hours invested in the case seems quite small for a case of this complexity. The facts and substance of this litigation are quite complex. Regardless of the reasons, the asserted hours suggest that counsel did not invest significant time in the case. Moreover, the Court is not convinced that counsel engaged the quality of experts which were necessary to prevail in such a case. Admittedly, to do so, would have required considerably greater expense, time, and risk.

---

[4] From the evidence, it appears that Zeon has always been in compliance with all environmental regulations.

Nothing in the foregoing remotely justifies attorney's fees at the level of $300,000. The Court has no way to verify the hours claimed. Such a nuisance settlement would not justify a significant contingency fee or a bonus of any kind. On the other hand, if the Court were to assume a reasonably generous $250 hourly fee for litigation and $100 per hour for claims administration, the total fees would equal only about $144,000.

The Court concludes that a reasonable award is $144,000 for attorney's fees; $27,417.34 for expenses claimed; and an additional $15,000 for future claim administration expenses.

The Court will enter an order consistent with this Memorandum Opinion.

_signature_
JOHN G. HEYBURN II
JUDGE, U.S. DISTRICT COURT

cc:   Counsel of Record